*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                                   :
JUANDA PETERMAN,                   :
                                   :
                    Plaintiff,     :              Civil Action No. 18-13751
                                   :
        v.                         :
                                   :                  **OPINION**
                                   :
NANCY A. BERRYHILL,                :
Acting Commissioner of Social Security, :
                                   :
                    Defendant.     :
_____ :

**WOLFSON, Chief United States District Judge:**

Juanda Peterman ("Peterman" or "Plaintiff"), appeals from the final decision of the

Acting Commissioner of Social Security, Nancy A. Berryhill ("Defendant") denying Plaintiff

disability benefits under Titles II and XVI of the Social Security Act (the "Act"). After

reviewing the Administrative Record, the Court finds that the Administrative Law Judge's

("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was 57 years of age at the time of her alleged onset date and 60 years old on the

day of the hearing. AR 60. Plaintiff completed the 12th grade and has past relevant work

experience as a tenants relations coordinator, eligibility and occupancy interviewer, program

aide, and office manager. AR 60-66; 83-84; 254-61. Plaintiff filed an application for disability

benefits, under Title II, on May 15, 2014 and one for SSI benefits, under Title XVI, on May 19,

2014, alleging onset as of October 31, 2013 and a date of last insured of December 31, 2018. AR

90, 224-233, 235. In her initial application, Plaintiff claimed the following injuries, illnesses, or conditions: arthritis spine, anxiety, depression, herniated disc, high blood pressure controlled, and acid reflux. AR 92, 105. Defendant denied Plaintiff's applications on July 29, 2014. AR 158-163. Plaintiff requested reconsideration, which Defendant denied on August 12, 2014. AR 164-170. Plaintiff then requested a hearing before an ALJ, AR 172-173, which was granted and, the hearing took place on November 15, 2016 before ALJ Beth Shillin. AR 56-89. In a Decision dated May 23, 2017, the ALJ found that Plaintiff was not disabled. AR 9-33. Plaintiff asked the Appeals Council to review the decision, which the Appeals Council denied on July 13, 2018, rendering the Commissioner's decision final. AR 1-5.

Plaintiff contests several aspects of the ALJ's decision. She argues that the ALJ 1) erred at step five of the sequential evaluation process by failing to assess whether Plaintiff required minimal vocational adjustment given her advanced age; 2) erred at step five by failing to take into account the impact of Plaintiff's mild mental limitations; 3) erred at step four, the RFC assessment, in failing to impose any limits on fingering; and 4) that the appointment of the ALJ violates the appointment clause of the United States Constitution.

### A. Medical Evidence

This appeal focuses on two areas of the medical record: evidence regarding impairments to Plaintiff's hands, and evidence regarding Plaintiff's mental impairments. For the purposes of this factual background, I will, therefore, concentrate on these two areas.

### 1. Evidence Related to Plaintiff's Hands

Plaintiff underwent hand x-rays on March 7, 2013, which revealed mild degenerative changes of the right first metacarpal phalangeal joint and mild degenerative changes of the bilateral greater multangular first metacarpal joint. AR 21, 448. A Rheumatology Progress Note from rheumatologist Wadle Toma, M.D., dated March 7, 2013, demonstrated tenderness of the

2nd through 5th PIP (proximal interphalangeal) joints of the right hand, along with bony enlargementand tenderness of the 1st CMC (carpometacarpal) joint and Heberden's nodes. AR 463-64.

On July 21, 2014, Patel Rambhai, M.D., conducted an internal medicine consultative examination; he found Plaintiff's grip strength was normal and opined that she could perform fine and gross movements with her hands. AR 450-51.

Plaintiff also had multiple visits to Dr. Harsha Shani. In October 2014, Plaintiff reported being afraid of dropping objects, and complained of "a lot of severe cramps" in her hands. AR 530. Dr. Shani noted reduced grip strength and bilateral tenderness of the MCP and PIP joints and positive Tinel's sign. AR 532-32. A November 18, 2014 nerve study with Dr. Sahni revealed carpal tunnel syndrome and Dr. Shani prescribed a cock-up splint. AR 521. At that visit, Plaintiff told Dr. Sahni that "her hands fall asleep all the time," with the right hand being "much worse" than the left, and reported that the pain was getting worse over the last three to four months, and that she had started to drop objects. AR 520. In a report dated December 9, 2014, Dr. Sahni noted no active synovitis or arthritis and 5/5 motor strength in all extremities, and notably, prescribed her physical therapy for her neck, back, and shoulders only, as well as an EMG of her lower extremities. AR 518-519. On February 24, 2015, Dr. Shani noted swollen and tender metacarpophalangeal joints of the hands and decreased grip strength. AR 516.

On March 3, 2016, Plaintiff visited Dr. Janak Goyal, M.D., complaining of arthritis, noting that her fingers lock. AR 543. Dr. Goyal noted Heberden's nodes in the fingers and tender and swollen carpometacarpal joints, and recommended local corticosteroid injections as needed and continuing her medications. AR 545. On October 27, 2016, neurologist Konstantin Balashov, M.D., found intact finger-to-nose and rapid alternative movements; normal finger

dexterity; full motor strength in all muscle groups, including the wrist extensors and handgrip; and normal vibratory sensation in the fingers. AR 713-14.

2. Evidence of Mental Impairments

The record also contains evidence regarding Plaintiff's alleged mental impairments. Plaintiff saw psychiatrist Shanthi Chezian, M.D., from April 4, 2013 to September 24, 2013. 336-46. In September 2013, Dr. Chezian noted that Plaintiff had coherent thought content, intact memory, a calmer affect, less depressed mood, and decreased attention and concentration "at times;" and Plaintiff reported that she was coping with social stressors. AR 344. Plaintiff reported that her meds were helping "to some extent" and she was "starting to cope with social stressors." AR 344. Dr. Chezian cleared her to return to work on October 1, 2013. AR 344. In December 2013, Plaintiff reported doing "relatively OK" with her meds, and stated that she had taken a retirement package, planned to look for another job, and was searching for an apartment that would accommodate her dogs. AR 345. When Plaintiff returned to Dr. Chezian on April 29, 2014, she was fully oriented with intact memory, coherent though content, a cooperative attitude, a less anxious affect, and anxious mood. AR 346. Dr. Chezian increased Plaintiff's Xanax and continued her on Cymbalta, which Plaintiff had tolerated relatively well. AR 346.

In July 2014, Plaintiff began psychiatric treatment with Dinesh Patel, M.D., noting at intake that she had financial stress because her unemployment benefits recently expired and her home was in foreclosure. AR 495. Plaintiff was appropriately groomed, composed, pleasant, and cooperative; she made good eye contact; her affect and speech were appropriate and unremarkable; her mood was anxious and depressed; and she had intact orientation and judgment, normal memory, unremarkable thought content, and good insight. AR 501-04. Dr. Patel made similar findings after his initial psychiatric examination later that month, with the only noted abnormality being Plaintiff's anxious and depressed mood and affect. AR 491-93. Dr.

Patel continued the medications previously prescribed by Dr. Chezian, with an increase in the dosage of Cymbalta. AR 494.

In a mental status examination with Dr. Dinesh Patel October 2014, Plaintiff reported ongoing financial problems and anxiety caused by the police "raiding" her house and damaging her property. AR 481. Nonetheless, Plaintiff's September and October 2014 mental status examinations remained essentially unchanged, except for additional findings of impaired attention and concentration and slowed speech. AR 481-86. In November 2014 and January 2015, although Plaintiff had a hypervigilant attitude and anxious and depressed mood, she had intact memory, insight, and judgment. AR 473-78.

Plaintiff saw Megan Vitale, L.C.S.W., on August 29, 2014, September 12, 2014, and October 28, 2014. 480-90. At the initial visit, Plaintiff reported financial struggles and feeling responsible for the care of her grandchildren. AR 490. Plaintiff said Xanax was working well for her; Plaintiff had a bright affect, neutral mood, and okay judgment. AR 490. In September, Plaintiff discussed her pending claim against her past employer and that she was waiting for an apartment that allowed her two big dogs. AR 488. Plaintiff's affect was flat and bright at times; her mood and judgment were good. AR 488. In October 2014, Plaintiff described her son's drug problems and arrest and reported that she was staying with her niece and nephew. AR 480. Plaintiff's affect was flat, her mood was neutral, and her judgment was okay. AR 480.

After no psychiatric treatment for over a year, in February 2016, Plaintiff saw Sahar Awad, M.D. AR 735-36. Despite the gap in treatment and a complaint of memory lapses, Plaintiff reported being "okay," cleaning, staying on her computer, and recently starting to learn Spanish on the computer. AR 735. Although Plaintiff's mood was depressed, she was cooperative and appropriate; her judgment and insight were good; and she had intact cognitive

functions and normal speech and thoughts. AR 735. Dr. Awad recommended that Plaintiff do word puzzles and number games, read, stay active, and continue taking Cymbalta and Xanax. AR 735. In April 2016, Plaintiff said she was "not good" and complained of feeling agitated when her blood pressure medicine ran out and the pharmacy did not have any available. AR 731. With the exception of her irritable mood, Plaintiff's mental status was normal, including good insight and judgment and intact cognitive functions. AR 733. Dr. Awad made no medication changes. AR 733.

In August 2016, Plaintiff reported that her Medicaid had mistakenly lapsed and, although she had not taken Xanax for several weeks, she was "not that bad." AR 728. Consequently, Mary Hermanns, A.P.N., did not restart Xanax. AR 728. Plaintiff had a euthymic mood, full range affect, normal speech and thought content, intact orientation and cognitive functioning, and good insight and judgment. AR 728-29. The following month Plaintiff said she was doing well and her mental status examination remained unremarkable. AR 727.

## B. Plaintiff's Testimony Before ALJ

Plaintiff appeared at the November 15, 2016 hearing before ALJ Shillin. Plaintiff testified that she graduated from high school and attended two years of college. AR 59. She has prior work experience, mainly in the area of public housing, starting as an interviewer, and holding various other jobs, including program coordinator, AR 60, a Section 8 coordinator, AR 63-64, and assistant public housing manager. AR 64. These jobs required "mostly paperwork," AR 64, though in some roles she had to be on her feet frequently. AR 62. Plaintiff last worked in October, 2013. AR 59. She stopped working because she had been forced to miss much of the previous year, mainly due to depression, but also because of several episodes of back pain and pain in her hand. AR 66-67. Plaintiff testified that there was a connection between losing her

house and her depression. AR 67-68. Doctors prescribed Xanax and Cymbalta, which provided relief for her depression. AR 68-69.

Regarding her physical impairments, Plaintiff testified that she experienced a burning sensation in her legs, for which she was seeing a neurologist. AR 70. She was prescribed oxycodone for the condition. AR 70. Plaintiff also testified that she was taking Naproxen and Gabapentin for arthritis in her hands. AR 73. The arthritis caused her to drop things a lot, but she could carry objects with her left hand, and was capable of paging through papers. AR 74-75. She also testified that she could write, but tried to avoid it when possible. AR 76-77.

Regarding her daily life, Plaintiff testified that she slept frequently and went to doctors appointments often. AR 78. She lives with her dog, and does the dishes, makes her bed, and sweeps the floor. AR 78. She also goes shopping for groceries "once in a while." AR 79. Plaintiff has a son and four grandchildren, whom she sees about once a month, though she talks with them often. AR 80. She does not use a computer, but can text on her cell phone. AR 80.

### C.  Vocational Expert's Testimony

At the hearing, the ALJ took the testimony of Tanya Edgehill, an impartial VE. AR 82-88. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work history, capable of a light exertional level, but incapable of using ladders, scaffolds, ropes, heavy machinery or heights, and only occasionally using stairs, ramps, crouching, crawling, kneeling or balancing with frequent handling, and no contact with the general public. The ALJ also asked the VE to put no restraints on Plaintiff's fingering and feeling. AR 84-85. The VE testified that Plaintiff had the transferable skill from her past work of record keeping, and based on that skill, could perform one job that existed in significant numbers in the general economy, that of data entry clerk. AR 85.

### D.  ALJ's Decision

ALJ Shillin issued her decision on May 23, 2017. AR 9-33. At step two, she concluded that Plaintiff had the severe medically determinable impairments of anxiety, depression, chronic back pain with cervical and lumbar DDD, generalized osteoarthritis, right CTS, and obesity. AR 14. At step three, she found that Plaintiff's impairments did not meet or equal one of the listed impairments. AR 15. At step four, the ALJ ruled that Plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work, as defined in 20 C.F.R. sections 404.1567(a) and 416.967(a), except for no climbing ladders, ropes, or scaffolds; no exposure to heavy machinery or unprotected heights; can occasionally climb stairs/ramps and crouch, crawl, stoop, kneel, or balance; can frequently handle with her bilateral upper extremities with no restraints on fingering or feeling; and can have occasional contact with the general public, coworkers, and supervisors. AR 19. The ALJ indicated that Plaintiff was an individual of advanced age on her alleged onset date, and subsequently changed the age category to closely approaching retirement age. AR 31. With the assistance of the testimony of the VE, the ALJ concluded that Plaintiff could not perform her past relevant work, but had the transferable skill of recordkeeping. AR 31. At step five, and again in consultation with the VE, the ALJ determined that Plaintiff retained the RFC to perform a single job that exists in significant numbers in the national economy, specifically the job of data entry clerk. AR 31-32. Therefore, the ALJ found that Plaintiff was not disabled from October 31, 2013 through the date of her decision. AR 32.

## II.  STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see*

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for

purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

## III.  <u>DISCUSSION</u>

Plaintiff challenges several aspects of the ALJ's decision, and generally asserts that the ALJ incorrectly applied the law and failed to rely on substantial evidence to find that Plaintiff did not meet the Act's definition of disability. Specifically, she argues that the ALJ 1) erred at step

five of the sequential evaluation process by failing to assess whether Plaintiff required very little, if any, vocational adjustment given her advanced age; 2) erred at step five by failing to take into account the impact of Plaintiff's mild mental limitations; 3) erred at step four, the RFC assessment, in failing to impose any limits on fingering; and 4) that the appointment of the ALJ violates the appointment clause of the United States Constitution.

### A. ALJ's Findings and Question to Vocational Expert Regarding Transferability of Skills

First, Plaintiff contends that the ALJ failed to apply the correct legal standards and make the necessary findings in determining that Plaintiff could make a successful vocational adjustment to the sedentary job identified by the VE. At Step Five, the ALJ must consider the plaintiff's RFC, age, education, and work experience in conjunction with the Medical–Vocational Guidelines ("the Guidelines") to determine if Plaintiff can perform other work in the national economy. 20 CFR § 404 subpt. P, app. 2. Age is a relevant factor for this determination and is divided into three categories: younger person (under age 50), person closely approaching advanced age (age 50 to 54), and persons of advance age (age 55 or older). 20 C.F.R. §§ 404.1563(b), 416.963(b). At the time of the ALJ's decision, Plaintiff was 57 years old, which made her a person of "advanced age." 20 C.F.R. § 404.1563(e). The regulations "consider advancing age to be an increasingly limiting factor in [a] person's ability to make ... an adjustment [to other work]." 20 C.F.R. § 404.1563(a). "[A]t advanced age (age 55 or older) age significantly affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(e). Accordingly, if a claimant is of advanced age and is limited to only light or sedentary work, the claimant will be considered unable to make the adjustment to other work at step five of the sequential analysis unless the claimant has acquired skills in her past work that she can transfer to other skilled or semiskilled jobs that she can perform despite her limitations. 20 C.F.R. §

404.1568(d)(4). More particularly, if an advanced age claimant is limited to only sedentary work, the ALJ can find that claimant's skills transferable to skilled or unskilled sedentary work "only if the sedentary work is so similar to [the claimant's] previous work that [the claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.*

As an initial matter, Plaintiff is incorrect that the ALJ did not apply the correct legal standard or make the necessary findings regarding the transferability of Plaintiff's skills. First, relying on the VE's testimony, the ALJ found that Plaintiff was of advanced age, and, based on Plaintiff's past work as tenants relations coordinator, eligibility and occupancy interviewer, program aide, and office manager, Plaintiff had the transferable skill of recordkeeping, which enabled her only to perform the job of a data entry clerk. The ALJ, next, made the required finding regarding the transferability of Plaintiff's skills to the occupation that the VE identified, explicitly concluding that Plaintiff's "previous work is so similar to the [job of data entry clerk] that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." AR 32. Accordingly, the ALJ properly performed the transferable skills analysis.

Plaintiff additionally contends that the ALJ erred by failing to include any information regarding Plaintiff's advanced age in the hypothetical posed to the VE. Plaintiff relies on an unreported 10th Circuit case for the proposition that "never rais[ing] with the vocational expert the significance of [the claimant's] advanced age and the resulting vocational adjustment issue" is reversible error. *Webster v. Barnhart*, 187 Fed. Appx. 587, 2006 WL 1806609 at *2-3 (10th Cir. 2006).

However, *Webster* notwithstanding, the regulations only require *an ALJ*, in situations where the claimant is of advanced age and limited to sedentary work, to find that that the claimant need only make minimal vocational adjustment in order perform the job identified by the VE. *See* 20 C.F.R. § 404.1568(d)(4). Plaintiff is correct that the ALJ did not explicitly ask the VE whether the occupation of data entry clerk was "so similar" to Plaintiff's past work. The regulations do not require, however, that the ALJ explicitly pose this question to the VE. This is especially true where, as here, the VE identified Plaintiff as having a transferable skill to a job that, as set forth in SSR 82-41, typically requires very little, if any, vocational adjustment:

> [W]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.

1982 WL 31389, at *6. Here, the VE identified data entry clerk, a clerical job with similar skills that was within Plaintiff's RFC, and concluded that Plaintiff's acquired skills in "recordkeeping" were transferable. In fact, it is undisputed that recordkeeping is a job skill of "universal applicability," such that its transferability can be accomplished with very little, if any, vocational adjustment. Compellingly, according to the same regulations, the data entry job requires a lesser degree of skill than Plaintiff's past relevant work, a situation where transferability is less likely an issue. *Id.* at *5; *see also* SSR 00-4p, 2000 WL 1898704, at *3 (The SVP levels in the DOT correspond to the Agency's classifications of occupations as unskilled, semi-skilled, and skilled).

Moreover, "ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). Plaintiff therefore must "*explain* [ ] ... how the ... error to which he points could have made any difference." *Id.* (quoting *Shinseki*, 556 U.S. at 413). Here, Plaintiff has not explained how the

ALJ's failure to explicitly reference Plaintiff's advanced age and the associated transferability standard in his questions to the VE would have altered the conclusion that Plaintiff possessed transferable skills. This is especially true where, as here, Plaintiff possessed a transferable skill of "universal applicability" that typically requires little, if any, vocational adjustment.

Thus, the ALJ did not err in her findings and questions to the VE regarding the transferability of Plaintiff's skills in light of her advanced age.

### B. Plaintiff's Mild Mental Impairments

Plaintiff argues that, in formulating her RFC assessment and in questioning the VE, the ALJ did not take into account the impact of Plaintiff's mild limitations with regard to understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing herself would have on Plaintiff's ability to perform the duties of data entry clerk. "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a). The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before [her]," and, although the ALJ may weigh the credibility of the evidence, she must "give some indication of the evidence which [she] rejects and [her] reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. "Where the ALJ's findings of fact are supported by

substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

In the present matter, the ALJ explicitly examined Plaintiff's mild mental impairments in formulating the RFC assessment, finding that Plaintiff's limited mental health treatment was effective in ameliorating her symptoms and her mental status examinations were largely unremarkable. AR 24-28. As the ALJ noted, Plaintiff's most recent treatment records indicate that she was "doing well" after starting psychotropic medications. AR 24, 727. In fact, in August 2016, Plaintiff reported that her Medicaid had mistakenly lapsed and, although she had not taken Xanax for several weeks, she was "not that bad," and the doctor did not restart her on the medication. AR 26-27, 728. After the same visit, it was noted that Plaintiff had a euthymic mood, full range affect, normal speech and thought content, intact orientation and cognitive functioning, and good insight and judgment, and her mental status examination a month later was similar. AR 26-27, 727-29. Moreover, as the ALJ explained, Plaintiff lived alone, took care of her dogs, handled her personal care without special reminders, and went out alone. AR 17-18, 30, 263-67. The ALJ noted that in February 2016, Plaintiff reported that she stayed on her computer and had recently started learning Spanish. AR 18, 26, 29, 735. Consequently, based on substantial evidence, the ALJ reasonably concluded that, aside from limiting Plaintiff's contact with others, the objective evidence failed to support additional or more restrictive limitations related to Plaintiff's mild mental functional limitations or mental impairments.

Plaintiff next argues that, even if the ALJ considered Plaintiff's mild mental impairments in formulating the RFC, she erred by not including these impairments in her questions to the VE. The Third Circuit has ruled that "an ALJ's hypothetical must include all of a claimant's

impairments." *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). However, where an ALJ

does not include an alleged impairment or limitation in his or her RFC determination, the ALJ

need not pose that alleged impairment or limitation to the vocational expert. *See Schmits v.*

*Astrue*, 386 F. App'x 71, 76 (3d Cir. 2010) ("Because that limitation is not in [the claimant's]

RFC, the ALJ did not need to consider it at Step Five" in posing a hypothetical to a vocational

expert); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 287 (3d Cir. 2006) (finding that the ALJ

did not err in failing to include in his hypothetical questions to the vocational expert "specific

reference[s] to [the claimant's] functional loss, mental limitations, and subjective complaints of

pain and fatigue," where the ALJ had already discredited those alleged impairments, excluding

them from his RFC determination); *Russo v. Comm'r of Soc. Sec.*, No.13–06918, 2014 WL

6991987, at *11 (D.N.J. Dec. 10, 2014) (observing that where "an ALJ has appropriately rejected

a limitation, that limitation need not be conveyed to the vocational expert.").

Plaintiff, however, relies on *Ramirez,* and a handful of cases interpreting it, for the

proposition that an ALJ must include all of Plaintiff's mental impairments, even her mild ones,

in her questions to the VE. [1]  As an initial matter, *Ramirez* did not concern a claimant who had

"mild" mental limitations that the ALJ neglected to include in his question to the VE. Rather, the

ALJ there found that claimant "often" suffers from "deficiencies of concentration, persistence, or

pace resulting in a failure to complete tasks in a timely manner." *Ramirez*, 372 F.3d at 549 (3d

---

[1] *See Gibson v. Comm'r of Soc. Sec.*, No. CV 17-6507, 2018 WL 6897648, at *4 (D.N.J. Dec. 21, 2018); *Deitz v. Astrue*, 2008 U.S. Dist. LEXIS 15617, at *30–31 (D.N.J. Feb. 29, 2008) (remanding because "the ALJ's hypothetical did not adequately capture all of [p]laintiff's limitations by failing to recite her [mild] limitations in concentration, persistence, and pace"); *see also Green v. Colvin*, 179 F. Supp. 3d 481, 486 (E.D. Pa. 2016) (relying on *Ramirez* and remanding because the "hypothetical questioning did not include [p]laintiff's credibly established mild limitations in activities of daily living and concentration, persistence, or pace").

Cir. 2004). It was the ALJ's failure to mention these frequently recurring deficiencies with which

the *Ramirez* court took issue, not a failure to mention mere mild impairments.

Moreover, even if claimants suffer from more severe mental impairments not included in

an RFC, *Ramirez* does not mandate remand if an ALJ fails to include those impairments in the

hypothetical. *Id.* Instead, *Ramirez,* requires Plaintiff to additionally establish that the record

otherwise suggests that additional limitations were necessary. *Durden v. Colvin*, 191 F. Supp. 3d

429, 459 (M.D. Pa. 2016). As another court in this Circuit has aptly explained:

> Moreover, we find the Third Circuit's decision in *Ramirez* distinguishable from the
> instant case. In *Ramirez,* the court observed that there may have been a valid
> explanation for the omission of a more detailed description of the claimant's mental
> limitation from the ALJ's hypothetical. The court noted that "the ALJ may have
> concluded that the deficiency in pace was so minimal or negligible that, even
> though Ramirez 'often' suffered from this deficiency, it would not limit her ability
> to perform simple tasks under a production quota," but found that the record
> seemed to suggest otherwise. The instant case presents the opposite situation, the
> record suggests that even though Plaintiff suffers from a moderate deficiency in the
> areas of concentration, persistence, and pace, and a mild deficiency in the area of
> social functioning, these limitations did not effect her ability to function in any
> discernable fashion during the relevant period.

*Whitmire v. Comm'r of Soc. Sec.*, 3:13–1380, 2014 WL 582781, at *8–9 (M.D.Pa. Feb. 14, 2014)

(quoting *Ramirez,* 372 F.3d at 555); *see also Durden v. Colvin*, 191 F. Supp. 3d 429, 459 (M.D.

Pa. 2016) ("Plaintiff merely asserts that, because the ALJ found Plaintiff to have moderate

limitation in concentration, persistence, and pace, then the RFC was automatically incomplete.

Plaintiff fails to perform the extra analysis required by *Ramirez* to indicate she had 'clearly

established in the record additional, specific deficiencies in concentration, persistence and/or

pace that could not be adequately conveyed' by the hypothetical."); *Santiago–Rivera v.*

*Barnhart*, CIV.A. 05–5698, 2006 WL 2794189, at *11 (E.D.Pa. Sept. 26, 2006) ("It is true that,

in *Ramirez*, the Third Circuit held that greater specificity than a limitation to one to two step

simple tasks may be necessary in presenting functional limitations caused by a mental

impairment in a hypothetical to a VE. However, the *Ramirez* Court specifically suggested that the case in which more may be required is one in which the Santiago–Rivera had *clearly established in the record* additional, specific deficiencies in concentration, persistence and/or pace that could not be adequately conveyed by a hypothetical limited to simple tasks.") (emphasis in original).

Here, as already explained, there was ample evidence in the record indicating that Plaintiff's mild mental impairments did not meaningfully impact her ability to function during the relevant period. The ALJ thoroughly examined and recounted these alleged impairments, finding that the medical evidence and Plaintiff's own testimony did not support their inclusion in Plaintiff's RFC. While the ALJ underwent this analysis, Plaintiff has failed to undertake the additional step required by *Ramirez*, of explaining how any other clearly established evidence in the record regarding these impairments were not adequately conveyed by the ALJ's hypothetical.[2]

Thus, the ALJ's decision to exclude Plaintiff's mild mental impairments from the RFC was supported by substantial evidence, nor did the ALJ err by failing to include Plaintiff's mild mental limitations in her hypothetical question to the VE.

### C.  ALJ's RFC Determination with Regard to Fingering Limitations

Plaintiff next challenges the ALJ's RFC finding, limited Plaintiff to frequent handling, but placing no restrictions on fingering. However, in formulating the RFC, the ALJ did more

---

[2] Plaintiff has also failed to explain how any purported failure to include these mild mental impairments in the hypothetical was not harmless error. *See, e.g., Holloman*, 639 F. App'x at 815 ("Holloman argues that a critical piece of evidence relating to step five—a vocational expert's answers to hypothetical questions about the availability of jobs that Holloman could still perform in light of his RFC, age, education, and work experience—could not have constituted substantial evidence because it was based on flawed hypothetical questions that did not reference Holloman's moderate limitation in social functioning. Any error here was harmless.")

than she was required to do, giving a thorough "indication of the evidence which [s]he rejects and [her] reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Indeed, the ALJ examined the objective medical evidence, and found that it did not support a fingering limitation. The ALJ found Plaintiff's right carpal tunnel syndrome severe (Tr. 14). Having carpal tunnel syndrome, however, does not translate into having fingering limitations. *See* 20 C.F.R. § § 404.1521, 416.921 (Disability is not determined merely by the presence of impairments, but on the resulting functional limitations experienced by a claimant). The ALJ thoroughly examined the remaining evidence regarding Plaintiff's hand pain, and concluded that it did not support a finding that Plaintiff had fingering limitations. For instance, at Plaintiff's most recent examination, on October 27, 2016, just weeks before the hearing, the ALJ noted that Dr. Konstantin Balashov found intact finger-to-nose and rapid alternative movements; normal finger dexterity; full motor strength in all muscle groups, including the wrist extensors and handgrip; and normal vibratory sensation in the fingers. AR 23; 713-14.

Thus, the decision to not include any fingering limitations in Plaintiff's RFC was supported by substantial evidence.

### D. Constitutionality of ALJ's Appointment

Finally, Plaintiff challenges the constitutionality of the appointment of the ALJ, relying on the Supreme Court's recent decision in *Lucia v. Securities & Exchange Commission*, 138 S.Ct. 2044 (2018). In *Lucia*, the Supreme Court ruled in favor of a plaintiff who argued that the ALJ who heard his case at the SEC was appointed by a method which did not conform to the Appointments Clause of the United States Constitution. The *Lucia* court found that, because the plaintiff had raised a "timely challenge" on this basis in his agency appeal, he was entitled to

relief in the form of a hearing before a different ALJ who had been appropriately appointed. 138 S.Ct. at 2055.

Plaintiff argues that *Lucia* applies to the Social Security Administration, and that her ALJ had not been appropriately appointed. Despite never raising the issue until now, Plaintiff also argues that a "timely challenge" in the Social Security context does not require that the issue be raised before the agency. For the latter proposition, she cites *Sims v. Apfel*, 530 U.S. 103 (2000), in which Supreme Court held that issues raised in an appeal to a federal court of a denial of benefits need not have been exhausted by raising them before the Social Security Appeals Council.

The vast majority of courts that have recently considered the issue have ruled that a social security claimant may not raise an appointments clause challenge for the first time upon appeal to a federal court. *See, e.g.*, *Jackson v. Berryhill*, No. 18-00591, 2019 WL 1417244, at *5 (D.N.J. Mar. 29, 2019); *Bonilla-Bukhari v. Berryhill*, No. 18-cv-263, 2019 WL 1007846, at *6–9 (S.D.N.Y. Mar. 4, 2019); *Catherine V. v. Berryhill*, No. 17-cv-3257, 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019); *Axley v. Comm'r of Soc. Sec.*, No. 18-cv-1106, 2019 WL 489998, at *1–2 (W.D. Tenn. Feb. 7, 2019); *Sprouse v. Berryhill*, No. 17-cv-4922, 2019 WL 1075601, at *4–6 (D.N.J. Feb. 6, 2019); *Shipman v. Berryhill*, No. 17-cv-309, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019); *Cox v. Berryhill*, No. 16-5434, 2018 WL 7585561, at *2 (E.D. Pa. Dec. 18, 2018); *Velasquez ex rel. Velasquez v. Berryhill*, No. 17-cv-17740, 2018 WL 6920457, at *2 (E.D. La. Dec. 17, 2018); *Abbington v. Berryhill,* No. 17-cv-552, 2018 WL 6571208, at *1–9 (S.D. Ala. Dec. 13, 2018); *Pearson v. Berryhill*, No. 17-cv-4031, 2018 WL 6436092, at *3–4 (D.

Kan. Dec. 7, 2018); *Stearns v. Berryhill*, No. 17-cv-2031, 2018 WL 4380984, at \*4–6 (N.D. Iowa Sept. 14, 2018).[3]

In *Abbington v. Berryhill*, for instance, the District Court for the Northern District of Alabama provided a persuasive explanation of its position that exhaustion of an Appointments Clause challenge before the ALJ is required. The *Abbington* court pointed out that *Sims* expressly noted that it was deciding specifically whether a claimant must raise an issue to the Appeals Council in order to preserve judicial review, but it was not deciding "[w]hether a claimant must exhaust issues before the ALJ." 530 U.S. at 107. This distinction is important because

> unlike in the proceedings before the Appeals Council (at least as they were construed in *Sims*), an ALJ does depend on the identification of issues by the claimant. Even to the extent that the ALJ can go beyond the issues identified by a claimant, the scope of her review would not ordinarily include an Appointment Clause challenge; therefore, to be present in a case, such a claim must be raised by the claimant before the ALJ.

*Sprouse v. Berryhill*, 363 F. Supp. 3d 543, 549 (D.N.J. 2019) (following *Abbington*); 20 CFR § 404.940 (see also require a claimant to "notify the administrative law judge at [the] earliest opportunity" if she objects to that ALJ conducting the hearing). Here, Plaintiff did not raise the appointments clause issue at any point in the administrative proceeding, not only in the proceedings before the Appeals Council, as explained in *Sprouse* and *Abbington*. As such, *Sims*

---

[3] Plaintiff cites two Pennsylvania district court cases that have held that a plaintiff need not raise an appointments clause challenge at the administrative level to be considered timely. *See Bizarre v. Berryhill*, No. 18-48, 2019 WL 1014194 (M.D. Pa. Mar. 4, 2019); *Muhammad v. Berryhill*, No. 18-172, Doc. 25 (E.D. Pa. Nov. 2, 2018). I am unpersuaded by their reasoning, for the reasons set forth, *infra*.

is distinguishable; in order to challenge the constitutionality of an ALJ's appointment, such a claim must be raised by the claimant before the ALJ.[4]

While excusing waiver of an Appointments Clause challenge is appropriate in "rare cases," *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), I am in agreement with *Abbington's* conclusion that

> regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would 'encourage the practice of "sandbagging": suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later – if the outcome is unfavorable – claiming that the course followed was reversible error.'

*Abbington*, 2018 WL 6571208, at *7 (quoting *Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment)).

Thus, because Plaintiff did not raise her constitutional challenge below, Plaintiff has waived the argument that she is entitled to a new hearing on the basis of *Lucia*.

## IV.    CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.


Dated:  May 31, 2019                             /s/ Freda L. Wolfson
                                                 Hon. Freda L. Wolfson
                                                 Chief United States District Judge

---

[4] Moreover, Plaintiff cannot now argue that she could not have made the argument before the ALJ because the hearing predated *Lucia*, as there was already "circuit split ... on the issue of appointment of ALJs" before the Supreme Court's ruling, which provided notice to litigants. *Cox v. Berryhill*, No. 16-5434, 2018 WL 7585561, at *2 (E.D. Pa. Dec. 18, 2018).